IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00186-DME-KMT

COLLECTACHECK, INC.,

       Plaintiff,

v.

CHECK COLLECTION & RECOVERY, INC., VICTOR LONG, AND CHARLES
HINLEY,

       Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

---

In this diversity action, Plaintiff CollectACheck, Inc. ("CollectACheck")

brings claims of breach of contract, fraud, and negligent misrepresentation

under Colorado law against Defendants Check Collection & Recovery, Inc.

("CC&R"), Victor Long, the CEO and a shareholder of CC&R, and Charles

Hinley, the CFO and a shareholder of CC&R.  This case is currently before this

court on Defendants' motion to dismiss for lack of jurisdiction pursuant to Fed.

R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P.

12(b)(6).  (See Doc. 6.)  Defendants argue that CollectACheck's claims should

be barred because the parties entered an agreement stating that neither party

would sue the other before December 19, 2008, and CollectACheck filed this

action in violation of that agreement on December 18.  CollectACheck does not

deny that it entered an agreement in which it promised not to bring suit before

December 19.  CollectACheck argues, however, that its breach of the agreement

was immaterial and, therefore, the court should not preclude it from pursuing its claims.

This court notes that the authorities are split over whether to preclude a lawsuit filed in violation of an agreement not to sue for a limited time.  The court declines, however, to weigh in on that general question in this case because, regardless of how the Colorado Supreme Court would decide that general question, it would not preclude a suit filed in violation of an agreement not to sue for a limited time where, as here, the Defendants have failed to demonstrate that the breach of that agreement was material.

This court exercises its jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, and DENIES the Defendants' motion to dismiss.


## I.  Background

CollectACheck entered into an Asset Purchase Agreement (APA) with the Defendants in late 2007.[1]  Pursuant to that agreement, CollectACheck purchased CC&R's Check Collection Business assets.  CollectACheck claims that, shortly after that transaction closed, it discovered that Defendants had made material misrepresentations about the purchased assets.  CollectACheck also alleges that Defendants have failed to honor some of the commitments they made under the APA and that Defendant Long trespassed onto CollectACheck's property.  Pursuant to Article 7.13 of the APA, this dispute is governed by

---

[1] The APA is dated October 31, 2007, but Article 2.4 provides that the closing may occur as late as December 31, 2007.

Colorado law.

The APA provided that CollectACheck would pay CC&R a total of $1,430,000.  CollectACheck agreed to pay $350,000 at closing, plus approximately $210,000 more in November 2007.  CollectACheck claims that it has made those payments.  The $870,000 balance was to be paid in monthly installments based on a promissory note "secured by the Purchased Assets." (Doc. 6 Ex. D1 at 22.)[2]   However, the APA provided that the monthly amount paid under the note, as well as the total purchase price, could be adjusted based on the performance of the purchased assets.  CollectACheck claims that, at least in part due to the wrongdoings alleged in this case, it is entitled to a $592,556 reduction in the total purchase price.  CollectACheck has also suspended its monthly payments due to the Defendants' alleged wrongdoings.  Defendants have filed a separate lawsuit against CollectACheck, challenging CollectACheck's failure to continue payments on the promissory note, in the United States District Court for the Southern District of Georgia.[3]  (See Doc. 6 Ex. D1.)

---

[2] The APA has been included in a number of filings before this court.  The most legible copy appears as part of Exhibit D1 to the Defendants' motion to dismiss.  The court will, therefore, cite to that copy of the APA.

[3] Although this case is before this court on a motion to dismiss under Rule 12(b)(6), the court may take judicial notice of court documents in deciding this motion.  See Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008) (relying on "state court documents of which the district court took judicial notice" in its recitation of the facts on its review of a district court's decision regarding a motion to dismiss); see also Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1149 (10th Cir. 2008) ("In essence, judicially noticeable facts are incorporated into the complaint.").

-3-

Before CollectACheck initiated this lawsuit, the parties attempted to settle their disputes.  As those settlement negotiations continued, CollectACheck apparently became concerned that, if it waited any longer to file its lawsuit, it might lose some of the protections it had been granted in the APA.  Article 6.1 of the APA states, "All of the representations, warranties and covenants of the respective Parties and the Seller's Shareholders contained in this Agreement, as set forth in Articles III and IV of this Agreement, shall survive the Closing for a period of twelve (12) months from the Closing Date."  (Doc. 6 Ex. D1 at 31.) Arcticle 6.2 provides, inter alia, that the Defendants would indemnify CollectACheck for losses that arose from "any breach of Seller or Seller's Shareholders' representations, warranties, or covenants set forth in this Agreement during the period of time that each such representation, warranty, or covenant survives."  (Id.)  The parties apparently shared the concern (or, in the case of the Defendants, belief) that these provisions could be read to prevent CollectACheck from claiming the protections provided in the APA in any lawsuit filed after the 12 month-period provided for in Article 6.1.  (See Doc. 8 at 3 n.1 (noting CollectACheck's concern "that the APA required indemnification claims . . . to be asserted before expiration of the survival period"); Doc. 6 at 6 (complaining that CollectACheck "relies upon the tolling provision to the extent it preserves its right to file suit [or, more precisely, its right to claim the protections of the APA in a lawsuit], but ignores the tolling provision which specifically

-4-

prohibits the filing of a lawsuit until December 19, 2008").).)[4]  In an apparent

attempt to continue negotiating a settlement without sacrificing CollectACheck's

ability to seek all of the protections provided by the APA in a lawsuit, the parties

agreed "to toll the 12 month survival period provided for in paragraph 6.1 of the

Asset Purchase agreement for an additional 19 days (until December 19, 2008)

(the 'Tolling Period') in order to facilitate the settlement of their dispute."[5]  (Doc.

6 Ex. C at 2.)  They further agreed "not to file any legal actions against the other

party during the Tolling Period."  (Id.)


## II.  Discussion

### A.  The Appropriate Basis for Defendants' Motion

Defendants argue initially that CollectACheck lacks standing to bring this

lawsuit because of its promise not to file suit until December 19, 2008.

Defendants fail, however, to provide any precedent in support of their argument

that a plaintiff who has signed an agreement not to sue lacks standing to file a

claim in violation of that agreement, and this court has found none.  Rather, it

appears that most courts have addressed similar issues under Fed. R. Civ. P.

12(b)(6) and 56.  See, e.g., Brooks v. Timberline Tours, Inc., 127 F.3d 1273,

_____

[4] This court does not mean to suggest that the parties' interpretation of
these provisions was reasonable.  In fact, as the court explains below, these
provisions merely related to the period under warranty and, apart from any
potential statute of limitations issues which are not addressed in this case, these
warranties do not depend on the timing of the lawsuit.

[5] The parties apparently entered two tolling agreements, but only the
second one is at issue here.

1274-75 (10th Cir. 1997) (affirming district court's decision granting summary judgment for defendants based in part on a covenant not to sue); <u>V-Formation, Inc. v. Benetton Group SpA</u>, No. 02-cv-02259-PSF-CBS, 2006 WL 650374, *3 (D. Colo. Mar. 10, 2006) (addressing defendant's motion for summary judgment based in part on a covenant not to sue); <u>Truong v. Smith</u>, 28 F. Supp. 2d 626, 628 (D. Colo. 1998) (converting defendant's Rule 12(b)(6) motion to dismiss, based on a release that plaintiffs signed, into a motion for summary judgment because the defendant's motion presented materials outside the pleadings); <u>Rutledge v. Int'l Bus. Machines Corp.</u>, Civ. A. No. 91-A-226, 1991 WL 214270, *1-*3  (D. Colo. Oct. 15, 1991) (addressing defendant's argument that plaintiff's claims were barred by a waiver or release on defendant's motion for summary judgment).  This court sees no reason to depart from that practice in this case.

Defendants also argue, without support, that the parties' agreement not to sue removes this court's jurisdiction to hear this case.  However, in an analogous case involving a defendant's attempt to enforce an arbitration agreement, this court recently clarified that "[t]he mere existence of an arbitration agreement [] does not divest a federal court of subject matter jurisdiction."  <u>Will v. Parsons Evergreene, LLC</u>, No.08- cv-00898-DME-CBS, 2008 WL 5330681, *1 (D. Colo. Dec. 19, 2008).  An agreement not to sue will also not generally divest a court of subject matter jurisdiction.[6]  Therefore, this

---

[6] The one exception to this rule is that an agreement not to sue will remove a court's jurisdiction to hear a claim for declaratory judgment.  <u>See</u> <u>Int'l Automated Sys., Inc. v. IBM</u>, 595 F. Supp. 2d 1197, 1208-09 (D. Utah 2009) (continued...)

court will analyze this case under Fed. R. Civ. P. 12(b)(6).[7]

Under Rule 12(b)(6), Defendants have the burden to demonstrate that CollectACheck has failed to state a claim upon which relief could be granted. See Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) ("The defendant has the burden of showing that the plaintiff has failed to state a claim for relief.").

B.  Courts and Commentators are Divided Over Whether an Agreement not to Sue for a Limited Time Should Bar a Suit Filed Within that Time Period

Courts are split over how best to enforce an agreement not to sue for a limited time.  Some courts hold that such an agreement should bar any suits

---

[6](...continued)
(citing 28 U.S.C. § 2201(a) and Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1345 (Fed. Cir. 2007)).

[7] The fact that this court is treating this claim as a motion to dismiss pursuant to Rule 12(b)(6) does not prevent the court from considering the Tolling Agreement or the APA.  The court may consider the APA because it was attached to CollectACheck's complaint. See Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001).  The court may also consider the Tolling Agreement because its provision extending Article 6.1 of the APA is central to CollectACheck's claim and is referred to in paragraph 56 of the complaint.  See Pace, 519 F.3d at 1072-73 (noting "that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute") (quoting Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253-54 (10th Cir. 2005)).  However, because this court is analyzing this case under Rule 12(b)(6), it will not consider most of the other exhibits attached to the Defendants' motion, CollectACheck's response, or Defendants' reply.  Nor will the court convert this motion into a motion for summary judgment because those additional documents are not necessary for the court's decision.

filed during that time.  See Shay v. First Federal of Miami, Inc., 429 So.2d 64,

65-66 (Fla. Dist. Ct. App. 1983) (holding that plaintiff who entered into an

agreement not to sue for a limited time had "waived the enforcement" of any

cause of action he would otherwise have against the defendant); New York

State Energy Research and Dev. Auth. v. Nuclear Fuel Serv., Inc., 561 F. Supp.

954, 965-66 (W.D.N.Y. 1983) (implying that a covenant not to sue for a limited

time would bar a suit brought within that time, but refusing to dismiss the case

on a motion for summary judgment because factual questions remained

regarding whether the plaintiff had actually promised not to sue and, if so, for

how long); Staver & Walker v. Missimer, 32 P. 995, 996-97 (Wash. 1893)

(holding "that a promise to forbear to sue for a definite time, where the promise

is based upon a sufficient consideration, can be pleaded in bar to the action").

Other courts disagree, holding that a party who files a suit in violation of

its agreement not to sue for a limited time may be liable for damages resulting

from its breach of contract, but should not be barred from bringing its case.  See

Kunza v. St. Mary's Reg'l Health Ctr., 747 N.W.2d 586, 592-93 (Minn. Ct. App.

2008) (holding that, unlike an agreement to never sue—which functions as a

release of defendant's liability—an agreement not to sue for a limited time does

not have "the effect of a release and [does not] serve as a bar to [plaintiff's]

action"); Walling v. Warren, 2 Colo. 434 (Colo. Terr. 1874) (holding that a

covenant not to sue for a limited time would not bar an action filed within that

time); Mendenhall v. Lenwell, 5 Blackf. 125 (Ind. 1839) (stating that "the law is

settled" that a covenant not to sue for a limited time "is no bar to an action

-8-

brought before the expiration of the given time"); Hawes v. Marchant, 11 F. Cas. 870 (Cir. Ct. D.R.I. 1852).

Scholarly authorities are also split on this issue.  Compare 12 Richard A. Lord, Williston on Contracts § 36:16 (4th ed.) ("A covenant not to sue for a limited time does not suspend or affect in any other way the covenantor's right to sue, but the covenantee's only remedy is by an action for damages for breach of the covenant."); with Restatement (Second) Contracts § 285 ("[A] contract not to sue for a limited time bars an action to enforce the duty during that time.").

C.  This Court Does not Need to Resolve this Issue Now

As this case concerns an issue that has not been decided by the Colorado Supreme Court, this court's duty, while sitting in diversity, is to ascertain how the Colorado State Supreme Court would decide the legal issues raised in this case.[8]  See Blackhawk-Central City Sanitation Dist. v. Am. Guar. and Liability

_____

[8] The Colorado Territorial Court decision cited on the previous page, that holds that an agreement not to sue for a limited time will not bar a suit filed within that time, does not control this case for two reasons.  First, since that decision came from a territorial court, and not a state court, it is probably not binding authority on the state courts.  Cf. Glatt v. Feist, 156 N.W.2d 819, 825-26 (N.D. 1968) (treating decision of territorial supreme court as persuasive, but not binding, authority); but see Turnbull v. Bonkowski, 419 F.2d 104, 105-06 (9th Cir. 1969) (deferring to Alaskan territorial court's interpretation of statutory language that was identical to the language used by the state despite the fact that the Alaska State Supreme Court had not adopted that interpretation).  Second, the only reason the court in Walling gave for its decision—that it would be unfair to permanently prevent a plaintiff from ever filing suit merely for violating an agreement not to sue for a limited for a limited time to file suit—does not apply in this case.  See Walling, 2 Colo. at 437 (stating that it would be unfair to preclude suit because "if the defendant plead such covenant
(continued...)

Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000) ("When the Colorado Supreme

Court has not yet addressed an issue, we seek to predict how that court would

decide the question.").  This "court's prediction of state law" may look to the

following sources for guidance: (1) "lower state court decisions and state

Supreme Court dicta"; (2) "the general rule on the issue"; (3) the rule in other

states looked to by [Colorado] courts when they formulate their own substantive

law"; and (4) "other available legal sources, such as treatises and law review

commentaries."  DP-Tek, Inc. v. AT & T Global Information Solutions Co., 100

F.3d 828, 831 (10th Cir. 1996) (quoting Menne v. Celotex Corp., 861 F.2d 1453,

1464-65 n.15 (10th Cir. 1988)).

    In this case, this court does not need to decide how the Colorado

Supreme Court would generally enforce an agreement not to sue for a limited

time.  Regardless of the answer to that question, the Colorado Supreme Court

would certainly not bar a suit filed in violation of an agreement not to sue for a

limited time where, as here, the defendant has failed to demonstrate that the

plaintiff's breach was material.

_____

(...continued)
in bar and succeed upon his plea, the plaintiff will be precluded from bringing his
second action after the time limited has expired").  Unlike the court in Walling,
which apparently believed that a dismissal of plaintiff's claims would
permanently prevent the plaintiff from raising those claims again, this court can
dismiss this case without prejudice to CollectACheck's ability to file suit anytime
after December 19, 2008, thus effectuating the terms of the contract without
unduly punishing CollectACheck.  Therefore, while Walling may provide some
support for CollectACheck's position, it does not resolve this issue for this court.

Colorado courts generally disfavor specific performance, and prefer to allow parties to breach their contracts and face the ensuing consequences. See, e.g., Schreck v. T & C Sanderson Farms, Inc., 37 P.3d 510, 515 (Colo. Ct. App. 2001) ("Equity will not decree specific performance of a contract to convey land if there is an adequate remedy at law."); see also Leach v. Fuller, 173 P. 427, 427-28 (Colo. 1918) ("The ground of jurisdiction to compel specific performance of an agreement is that the party seeking this relief cannot be fully compensated by an award of damages at law.  Some special circumstances must exist to take the case out of the general rule that the remedy for breach of contract is by an action for damages.") (internal citation omitted).  Thus, the burden generally falls on the party seeking specific performance to demonstrate the inadequacy of damages as a remedy.  See id. at 428.  In this case, Defendants' request that this court preclude this suit essentially asks that the court order specific performance of the parties' agreement not to sue before December 19, 2008.  This court is very reluctant to grant that relief without a showing that a damages remedy would be inadequate.

Further, although Colorado law permits a party to maintain a cause of action for an immaterial breach of contract, the only remedy that Colorado courts recognize for such a breach is nominal damages.  See Interbank Investments, LLC v. Eagle River Water and Sanitation Dist., 77 P.3d 814, 818 (Colo. Ct. App. 2003) ("When a plaintiff establishes breach, but does not prove actual damages, the plaintiff is entitled to nominal damages.").  Given Colorado's general preference for damages to remedy contract breaches, and

-11-

the fact that Colorado has only allowed a party to recover nominal damages for an immaterial breach of contract, this court determines that the Colorado Supreme Court would not bar a suit filed before the termination of an agreement not to sue for a limited time where the breach of that agreement was immaterial.

In this case, Defendants have failed to demonstrate the materiality of CollectACheck's breach of its agreement not to file suit until December 19, 2008 and, therefore, have not met their burden of showing that CollectACheck should be barred from bringing this lawsuit.  CollectACheck filed its lawsuit less than four hours before December 19.  (See Doc. 8 at 3.)  Defendants argue they were harmed by this breach because it enabled CollectACheck to "win a race to the courthouse." (Doc. 6 at 6.)  As CollectACheck notes, however, Defendants waited three more days before filing their own lawsuit against CollectACheck.  It appears, therefore, that CollectACheck was going to win that race to the courthouse regardless of whether it complied with the terms of the Tolling Agreement.  Further, Defendants have failed to show how CollectACheck's early filing caused the Defendants any harm.  Defendants could assert any claims they have against CollectACheck as counterclaims in this suit, and the Defendants have provided this court with no reason to think that would place the Defendants at a disadvantage.

Defendants further argue that they "will undoubtedly suffer significant financial prejudice as a result of Plaintiff's actions for . . . Defendants did file their own Complaint . . . . [and, a]s such, if Defendants' Motion is denied, it will be required to defend two (2) separate actions asserting identical claims . . . ."

(Doc. 9 at 5.)  This argument also lacks merit.  For starters, Defendants have failed to show why they could not voluntarily dismiss their claims in the other case and bring those matters as counterclaims in the instant lawsuit. Alternately, Defendants may be able to transfer that case to the District of Colorado and consolidate the two cases pursuant to Fed. R. Civ. P. 42.  Thus, Defendants have failed to show how CollectACheck's breach may have harmed the Defendants.

Ironically, CollectACheck's own brief provides the most plausible, but still unconvincing, reason that its breach may have harmed the Defendants. CollectACheck argues that it filed this case on December 18, 2008 in order to avoid any doubt that it was entitled to the full protections provided in the APA.  If CollectACheck's fears were well-founded, and it would not have been entitled to those protections if it filed suit the following day, its breach of the agreement not to sue may have been material because that one-day difference would have enabled CollectACheck to claim contractual protections that it would not otherwise have had.  However, this court fails to see how a suit filed only one day later would have prevented CollectACheck from seeking the full protections provided under the APA.  Apart from any issues relating to the statute of limitations, which have not been raised in this case, the protections provided in the APA do not depend on the timing of a lawsuit.  Article 6.1 provides, inter alia, that the "representations, warranties and covenants . . . contained in this agreement . . . shall survive . . . for a period of twelve (12) months from the Closing Date."  (Doc. 6 Ex. D1 at 31.)  This provision states nothing about the

timing of a lawsuit based on those representations, warranties and covenants. Rather, it relates to the timing of the breach—if a breach occurs more than twelve months after the Closing Date (or, in light of the Tolling Agreement, after December 19, 2008), a complaining party would be unable to seek the protections provided by the "representations, warranties and covenants" in the contract.  However, a party who sued for a breach of the APA that occurred during the survival of the APA's "representations, warranties and covenants" would be entitled to all those protections even if the lawsuit was filed after their expiration.

Similarly, Article 6.2 provides, inter alia, that the Defendants would indemnify CollectACheck for losses that arose from "any breach of Seller or Seller's Shareholders' representations, warranties, or covenants set forth in this Agreement during the period of time that each such representation, warranty, or covenant survives."  (Id.)  This provision also does not make the protections it provides contingent on the timing of the lawsuit.  Like Article 6.1, Article 6.2 merely indicates that certain protections expire at a certain time.  Any breach that takes place after the expiration of those protections will not be covered by the indemnification provision.  There is no reason to think, however, that a party would be precluded from claiming the protections of these warranties for a breach committed while those warranties remained valid—even if the lawsuit was filed after the termination of the survival period.  Therefore, CollectACheck's breach of its agreement not to sue until December 19, 2008 had no material impact on the protections it could claim and, since

-14-

CollectACheck's breach was immaterial, this court will not preclude

CollectACheck from proceeding with this lawsuit.[9]


## III. Conclusion

For the foregoing reasons, this court DENIES Defendants' motion to

dismiss.

DONE AND SIGNED this   6th   day of May, 2009.

BY THE COURT:

*s/ David M. Ebel*

_____
David M. Ebel
U. S. Circuit Court Judge

_____

[9] This court also notes that, in light of the parties' apparent misreading of the APA, the Tolling Agreement may have been intended to allow CollectACheck to file suit on December 19, 2008 and still claim the protections that the parties thought would be unavailable for suits filed after the protections lapsed.  In other words, in light of the parties' misunderstanding, it appears that the Tolling Agreement may have been intended to extend the warranties provided in the APA one day beyond the time during which the parties agreed not to sue.  If that interpretation of the Tolling Agreement is correct, then CollectACheck's breach was certainly immaterial because it could have filed the very next day and been entitled to the same protections.  CollectACheck relies primarily on this interpretation of the Tolling Agreement to support its argument that its breach was immaterial.  However, this interpretation would go against the plain language of the Tolling Agreement, which indicates that the "Tolling Period" is coextensive with the period during which the parties agree not to bring suit.  In either case, the interpretation of the Tolling Agreement is not relevant to the court's decision because the court rejects the underlying premise of this entire line of argument, and is of the opinion that the APA does not make any of its protections contingent on the time that a lawsuit was filed.  This court does not, therefore, express any opinion about the correct interpretation of the Tolling Agreement.